UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | } |
| | } |
| v. | } CASE NO.  5:18-CR-00056-VEH-HNJ |
| | } |
| **BRIAN ROBERT SODI** | } |

## ORDER

This matter proceeds before the undersigned on Defendant Brian Robert Sodi's Motion to Modify Conditions of Release. (Doc. 24). This Court sustained Sodi's release on a $250,000 unsecured bond and electronic monitoring, among other conditions. In his Motion, Sodi requests removal of the electronic monitoring condition; in lieu thereof, he proposes attachment of a $1 million equity interest in real property as security for his release on bond. Pursuant to the following analysis, the court **GRANTS** Sodi's Motion.

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq., authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. Under the BRA, a court must order pretrial release on personal recognizance or upon the execution of an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In such circumstances, the judicial officer must consider a set of conditions for release on bond that would satisfy the statutory goal.

18 U.S.C. § 3142(c). "If, after a hearing pursuant to [section 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). This case does not present an issue whether Sodi presents a danger to the community or other persons; rather, his release on bond occasioned the issue whether he presents a flight risk.

Although the motion at bar involves the modification of Sodi's conditions on release, the applicable standard for imposition of bond or detention informs the analysis regarding the least restrictive conditions necessary to allay the risk of nonappearance at court proceedings. The flight-risk determination entails "a two-step inquiry. 'First, the court must make a finding as to whether the defendant presents a risk of flight if not detained. Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released.'" *United States v. Enix*, 209 F. Supp. 3d 557, 563 (W.D.N.Y. 2016) (quoting *United States v. Shakur*, 817 F.2d 189, 194–95 (2d Cir. 1987)). As to the first step of this inquiry, the Government bears the burden of proof by a preponderance of the evidence. *U.S. v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

To determine whether a defendant poses a serious flight risk, the court reviews the statutory factors set forth in section 3142(g): (1) the nature and circumstances of the offense(s), (2) the weight of the evidence, and (3) the history and characteristics of the defendant.[1] These factors require a court to consider "whether a defendant has substantial foreign ties, has access to considerable funds to finance flight from the jurisdiction, or has manifested or demonstrated an intent to flee . . . ." *United States v. Giordano*, 370 F. Supp. 2d 1256, 1263–64 (S.D. Fla. 2005) (citing *Quartermaine*, 913 F.2d at 916-17 (defendant was a serious flight risk because he had access to considerable funds outside the United States, stated that Honduras was his country, and had business ties to Panama and Colombia)).

Furthermore, the determination whether a defendant poses a serious flight risk generally requires "more than evidence of the commission of a serious crime and the fact of a potentially long sentence." *Giordano*, 370 F. Supp. 2d at 1264 (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). That is, a "mere theoretical opportunity for flight" does not constitute sufficient grounds for pretrial detention. *Giordano*, 370 F. Supp. 2d at 1264 (citing *United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (possession of one false form of identification not enough by itself to

---

[1] Section 3142(g) lists another factor for consideration of the appropriate conditions for release: and the nature and seriousness of the danger posed by the defendant's release. On first analysis, this factor does not apply because the parties have not expressed any concern that Sodi poses a danger to the community or to others. However, danger to the community may manifest as continued commission of financial crimes. *See United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005). Nonetheless, the Government has not contended Sodi continues any criminal activities, so the Court will bypass consideration of this factor.

justify pretrial detention in the absence of evidence that defendant actually intended to flee from prosecution)).

Moreover, "[r]elevant factors that support a serious risk [of flight] include the use of a number of aliases, unstable residential ties to a community, efforts to avoid arrest, or hidden assets." *Giordano*, 370 F. Supp. 2d at 1264 (citing *Friedman*, 837 F.2d at 49). "Evidence of a serious intent to flee the country in response to an indictment also justifies detention as a serious risk of flight." *Giordano*, 370 F. Supp. 2d at 1264 (citing *United States v. Vortis*, 785 F.2d 327 (D.C. Cir. 1986); *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.1990) (defendant detained as a flight risk because of substantial foreign contacts); *United States v. Cole*, 715 F. Supp. 677, 679 (E.D. Pa.1988) (defendants posed serious flight risk because they held and used foreign passports and told undercover agents they would flee if arrested)). "Of course, evidence that a defendant had already attempted to flee prosecution would certainly bolster a finding of a serious risk of flight, especially where the defendant had foreign contacts who could aid in his flight." *Giordano*, 370 F. Supp. 2d at 1264 (citing *United States v. Maull*, 773 F.2d 1479 (8th Cir. 1985) (en banc )).

"In economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains. Merely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant even in the face of a high monetary bond." *Giordano*, 370 F. Supp. 2d at 1264 (citing *United States*

4

*v. Epstein*, 155 F. Supp. 2d 323 (E.D. Pa. 2001) (reversing magistrate judge's denial of detention; $1 million personal surety bond and electronic monitoring was not sufficient security based upon defendant's non-citizen status and lack of ties to the United States); *United States v. Ishraiteh*, 59 F. Supp. 2d 160 (D. Mass. 1999) (detention appropriate for non-citizen defendant charged with mail and wire fraud who had extensive family and employment ties with foreign entities and no family ties to the United States or district where charges pending)).

Based upon the foregoing explication, the circumstances at present compel the Court to grant Sodi's Motion. The nature and circumstances, and weight of the evidence,[2] regarding Sodi's security fraud and other related offenses indicate commission of a serious crime purportedly garnering $1 million in proceeds. The Government hints Sodi may have committed other offenses by referring to the Indictment's detailing of only four schemes, which supposedly intimates the existence of undetected schemes. Moreover, the offenses present a range of punishments, including 5, 20, and 25 years of incarceration. These circumstances create an incentive for Sodi to flee in an effort to avoid confinement for a prolonged period of time.

---

[2] The weight-of-the-evidence factor assesses the strength of the government's case as well as the defendant's flight risk. *See United States v. Taylor*, 289 F. Supp. 3d 55, 2018 WL 272748, *6 (D.D.C. 2018) ("The Court is unconvinced that the "weight of the evidence" factor focuses on the defendant's danger to the community (or risk of flight) to the exclusion of any consideration of the strength of the government's case. . . . The Court must, instead, review the 'weight of the evidence against the'" defendant as an indicia of whether any conditions of pretrial release will reasonably assure the safety of the community.").

As for the Defendant's characteristics, the Government asserts that Sodi possesses the financial means to flee. Sodi owns a $786,000 home in Palm Beach County, Florida; $1 million in equity on a $2.7 million property in Boca Raton, Florida, that is presently the site of home construction; and a luxury home in Nicaragua. He presently tenders $9,655.74 in mortgage payments per month, which exhibits somewhat his financial means. In addition, he and his spouse pledged $250,000 for his release on bond, and Sodi's ownership of the Nicaraguan home indicates a significant financial tie to a foreign country.

Beyond these assertions, however, the Government has not demonstrated the scope of Sodi's bank account deposits or other sources indicating substantial financial means. The Government argues that Sodi's wealth may substantially outstrip the $1 million property surety he pledged, such that losing the surety will occasion no appreciable deterrent against flight. Although the Government does not err in its misgivings as such alleged circumstances heighten the flight risk, the Government's suggestion merits reduced weight in the absence of evidence revealing substantial assets under Defendant's control. *See United States v. Patriarca*, 948 F.2d 789, 795 (1st Cir. 2001) ("Plainly contemplated by [§ 3142(c) regarding proposed property forfeiture] is some exploration of a defendant's assets or net worth. Without such information we fail to see how a judicial officer could arrive at a forfeiture amount which would reasonably assure compliance."). Based upon the information presently before the Court, a $1 million property surety appears substantial.

As further countervailing factors regarding his history and characteristics, Sodi is married with three minor children, and he has lived in southern Florida his entire life. He has surrendered his passport, and bond conditions restrict him from applying for a replacement or any other travel documents. Furthermore, Sodi does not have a criminal history or any history of substance abuse. In addition, the Probation Office has not reported any violations by Sodi of his bond conditions, and indeed, he reported for his arraignment here in this district.

Most importantly, the weight of the evidence regarding Sodi's flight risk falls substantially in his favor. *See United States v. Taylor*, 289 F. Supp. 3d 55, 2018 WL 272748, *6 (D.D.C. 2018) (the weight of the evidence factor focuses upon the defendant's flight risk as well as the strength of the government's case); *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (the weight-of-the-evidence factor assesses the record evidence's probative value for flight risk or danger to the community). Sodi has not evinced any propensity to flee prosecution. That is, there exists no evidence thus far that Sodi uses a number of aliases, possesses unstable residential ties to southern Florida, attempted to avoid arrest, or hides assets. The Government has not presented evidence of strong family or business ties to a foreign nation; the Nicaraguan property indicates significant financial ties to that nation, yet there is no indication that asset exists as other than an investment property. Therefore, these factors weigh considerably against a finding that Sodi presents a substantial flight risk.

To be sure, the decision that set forth the foregoing factors, *United States v. Giordano*, afforded the defendant release, yet pursuant to house arrest and electronic monitoring in addition to a $1 million bond. 370 F. Supp. 2d at 1272. However, the defendant therein possessed more financial resources, *id.* at 1268-69, and his alleged offenses indicated victim's losses totaling more than $10 million. *Id.* at 1264-66. The record at present does not present like circumstances.

Finally, the pretrial services report and its addendum, drafted separately by two probation officers, both cite a lone factor regarding Sodi's risk of nonappearance – his financial ties to a foreign country (ostensibly his ownership of the Nicaraguan property) – and both recommended Sodi's release on bond without any condition of electronic monitoring.[3] The court relies considerably upon the assessment by these officers in the determination of Sodi's Motion.

Based upon the foregoing analysis, the least restrictive conditions that will ensure Sodi's appearance at court proceedings and allay a flight risk does not include electronic monitoring. The record at bar does not convince the court that Sodi will flee prosecution of this case, and by extension flee his substantial ties to his community in Florida. Therefore, the court will accept Sodi's $1 million property pledge for his bond and remove the electronic monitoring restriction.

---

[3] As a matter of policy, the Southern District of Florida, where Sodi was arrested, initially imposed a curfew and an electronic monitoring condition to assure Sodi's presence at the arraignment in this district. The Southern District of Florida's policy relents to the charging district for any post-arraignment imposition of bond conditions. Nevertheless, the Southern District of Florida's pretrial services officer did not oppose removal of the electronic monitoring restriction and does not believe Sodi is a flight risk.

The court **GRANTS** Defendant's Motion to Modify Conditions of Release and orders removal of electronic monitoring. Furthermore, the court **DIRECTS** the Clerk of Court to effect attachment of the $1 million property pledged by the Defendant as additional surety for his bond.

**DONE** this 25th day of April, 2018.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE