D. Loren Washburn (#10993)
lwashburn@smithcorrell.com
**SMITH CORRELL, LLP**
8 East Broadway, Suite 320
Salt Lake City, UT 84111
Telephone: (801) 584-1800
Facsimile:  (801) 584-1820
*Admitted Pro Hac Vice*

Jack W. Selden
jseldon@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8472
Facsimile:  (205) 521-8800

Neil A. Kaplan
nak@clydesnow.com
**CLYDE SNOW & SESSIONS**
201 South Main Street, 13th Floor
Salt Lake City, UT 84111
Telephone: (801) 322-2561
Facsimile:  (801) 521-6280
*Admitted Pro Hac Vice*

*Attorneys for Brian R. Sodi*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN R. SODI,<br><br>    Defendant. | **OBJECTION TO MOTION FOR PROTECTIVE ORDER**<br><br>Case No. 5:18-cr-00056-VEH-HNJ-1 |

With this response, Defendant Sodi objects to three aspects of the protective order proposed by the government but does not generally object to the entry of a protective order.[1] The three provisions in the proposed protective order that Mr. Sodi objects to would impose a substantial financial and logistical burden on him without good cause and would prove unworkable in the context of this case, where there is a parallel civil suit filed by the SEC covering the same topics. Specifically, Mr. Sodi objects to the provisions in the proposed protective order: (1) precluding

---

[1] While not objecting to the idea of a protective order, Mr. Sodi does note that the general conclusory bases identified by the government in its motion do not amount to "good cause" for a protective order, much less for the specific provisions in the protective order proposed by the government.

**OBJECTION TO MOTION FOR PROTECTIVE ORDER**
**CASE NO. 5:18-CR-00056-VEH-HNJ-1, PAGE 1**

him from reviewing discovery without his counsel being present; (2) limiting use of the discovery materials to this criminal case; and, (3) allowing the government to post hoc designate records as protected.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   APPLICABLE LAW

United States District Courts have substantial discretion to conduct discovery in order to protect the interests of third parties, as well as litigants.[2] Here, the government relies on the general authority to regulate discovery found in Rule 16(d). The government also cites to Rule 49.1, which is a non-sequitur concerned with public filings and does not apply to pretrial discovery where the documents are not being publicly filed. Neither of these rules provides a basis for the objectionable provisions of the proposed protective order because the government has failed to show good cause for those specific provisions.

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *United States v. Belfast*, No. 06-20758-CR, 2007 WL 9705938, at *2 (S.D. Fla. Apr. 26, 2007) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). "Because the injury must be demonstrated with specificity, 'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing." *Belfast* at *2 (quoting *Pansy*, 23 F.3d at 786). "[T]he burden is on the party seeking the protective order to make a sufficient showing of why it is needed." *United States v. Sharma*, No. 6:09-CR-1-ORL-19GRJ, 2009 WL 10698017, at *2 (M.D. Fla. Mar. 17, 2009) (quoting Charles Alan Wright, *Federal Practice And Procedure: Criminal 3d* § 258 (3d ed. 2000)). Courts within the 11th Circuit have not clearly defined the contours of what can constitute "good cause," but some examples in which courts, including this Court, have found good cause include a protective order clawing back an inadvertently disclosed prosecution memorandum[3] and a

---

[2] *See e.g.*, Fed. R. Crim. Proc. 16(d).
[3] *United States v. Carr*, No. 5:13-CR-00139-RDP, 2013 WL 3242938, at *6 (N.D. Ala. June 24, 2013).

protective order limiting the timing of disclosure of the identity of witnesses when there is a legitimate and articulable risk of witness harm or intimidation.[4]

## II.   ARGUMENT

### (a)   THE GOVERNMENT HAS FAILED TO SHOW GOOD CAUSE WHY MR. SODI SHOULD NOT BE ALLOWED TO REVIEW DISCOVERY WITHOUT HIS COUNSEL PRESENT.

Mr. Sodi objects to the proposed protective order insofar as it would preclude him from reviewing discovery outside the presence of counsel. The government has failed to show good cause for this "nanny" provision, specifically failing to identify any reason to believe that Mr. Sodi could not be trusted to follow a protective order that allowed him to review the information unsupervised, but not to use it other than to defend against this case the related SEC litigation. Moreover, the government has failed to show good cause why Mr. Sodi should bear that cost of this proposed provision when the government can simply take steps to redact the personal identifying information that it subjectively and without demonstrated cause believes Mr. Sodi should not be exposed to.

The scope of the government's proposed protective order is very broad. Under the proposed protective order:

> [W]hen items to be produced by the Government in discovery *contain or may contain* personal identity information, *such as names*, social security numbers, dates of birth, financial account numbers, addresses, or contain information pertaining to cooperating witnesses, such items shall be designated "protected discovery materials" for the purposes of this Protective Order.[5]

In other words, under the terms of the government's proposed protective order, any document that contains a person's name, for example, "shall be" designated and covered under the protective order. It is hard to imagine many documents that will not have the name of some individual on them, meaning that virtually every document the government could disclose as part of its discovery is within the scope of this proposed protective order. Despite the breadth of this

---

[4] *United States v. Mitrovic*, 286 F.R.D. 683, 688 (N.D. Ga. 2012) (allowing disclosure of witness identities to attorneys only until 15 days before trial).
[5] D.E. 36 at p. 7 (emphasis added).

coverage, that is not what concerns Mr. Sodi; Mr. Sodi has no objection to an order that covers all of those materials and limits use of documents, within reason. It is only when combined with the provision requiring him to have supervision to review discovery that the proposed order is objectionable to Mr. Sodi.

The proposed protective order provides that Mr. Sodi may not personally review "protected discovery material" except in the presence of his counsel. More specifically, the proposed protective order provides that Mr. Sodi may only "review the protected discovery materials in the presence of counsel and his/her employees, but shall not make copies or recordings of any type."[6] It further provides that "Defense counsel shall not leave the originals or copies of the protected discovery materials with the defendant."[7]

The practical effect of this prohibition is to make it so that for Mr. Sodi to review the evidence against him and assist in his own defense he will have to incur the substantial expense of having counsel travel to his home, or he will have to undertake the procedural hassle of seeking the Court's permission to travel to his counsel's office (and then incur the expense of traveling himself). Rather than simply reviewing documents through a digital portal and discussing them with his counsel, he must be physically present with his counsel to review discovery. This also dramatically increases expenses to Mr. Sodi because he will have to pay for counsel's time during these review sessions. In short, the proposed protective order will make it very expensive, and logistically difficult—regardless of expense—for Mr. Sodi to meaningfully assist in his defense.

Such a substantial burden would require substantial "good cause," but the government provides none. Rather, the government offers only generalities such as that "victim information… is extremely valuable to fraudsters;" that victims can end up on a "sucker list;" and that Mr. Sodi is accused of using a mailing list to tout stocks. It bears noting that each of these statements is independent and not logically connected to the next. From these unconnected generalities, and with no articulated reasoning the government concludes that the "defendant cannot be trusted with

---

[6] D.E. 36 at p. 8.
[7] *Id.*

unsupervised possession of the information." However, nothing in the government's proffer identifies a reason that Mr. Sodi cannot be trusted to follow a court order that limits his use of this information. The government's position is insufficient for a number of reasons.

First, nothing in the Indictment alleges that Mr. Sodi ever used or compiled a "sucker list." Similarly, nothing in the Indictment or motion suggests that Mr. Sodi ever used stolen personal identifying information or abused anyone's personal identifying information. Rather, the mailing lists that Mr. Sodi used came from people who paid to subscribe to newsletters about stocks and who opted-in to receiving those newsletters. There is nothing about the allegations in the Indictment to suggest that Mr. Sodi has any history of, or future propensity for, misusing personal identifying information of anyone.

Second, Mr. Sodi has not been in the newsletter or stock promotion business in any capacity for almost five years. As the Court will note, the Indictment concerns transactions that took place in 2012 and early 2013. The government has not presented, in the Indictment or its motion, any accusation that Mr. Sodi has done a single act with regard to stock promotion or mailing lists in almost 5 years; this is because he has not done so. Since he is not and has not for years been involved in the business, the notion that he is a "fraudster" who would find "victim information" valuable to create a "sucker list" is at best speculation, and not the "specific examples or articulated reasoning" required to justify a protective order.[8] Where Mr. Sodi has not been involved in promotional mailings, or creating or using mailing lists for half a decade, the government's general concerns about what generic "fraudsters" might do has nothing to do with a specific articulated concern about Mr. Sodi, who is no longer in this business.[9]

---

[8] *Belfast* at *2 (quoting *Pansy*, 23 F.3d at 786).
[9] The government's concern is also deficient because the information the government would provide is at least five years old. Assuming, counterfactually, that Mr. Sodi was both (1) willing to abuse others' personal financial information and (2) was still involved in the direct mailing industry, both of which he is not, it is unclear whether five-year-old information would be of much value to him. The government seems to assume it would be, but its reasoning is faulty. According to the government, Mr. Sodi, who was paid millions of dollars to use the lists he already had to promote stocks, stopped doing it five years ago; but, if given access to the discovery in this case, would presumably start up business again using the information he gets in discovery even in contravention of a Court order prohibiting him from doing so. This is not only not based on fact,

Third, there is no good cause for the provision requiring that Mr. Sodi be accompanied when he reviews documents where he is willing to have a protective order entered that would preclude him from making any non-litigation use of the information. The government has presented no information, much less good cause, to establish that Mr. Sodi cannot be trusted to abide by a protective order that limits his use of the discovery he is provided. An order that would preclude him from using this information to contact victims or preclude him from making any use of the information other than in the preparation of his defense to this and the related SEC lawsuit, is perfectly acceptable to Mr. Sodi.[10]

Alternatively, if the government believes he cannot be trusted with certain information, the government could undertake to redact the information that it believes Mr. Sodi should not have. Mr. Sodi would not object to an order that allowed the government to redact personal identifying information to address the government's articulated concerns, especially were his counsel able to get access to the unredacted records as needed. This would place the burden on the government to address its concern, rather than on Mr. Sodi's constitutional right to review the evidence against him and assist in his own defense without undue burden.

Mr. Sodi does not object to conditions that would protect the public from having their personal identifying information misused. He does not even object to a condition, like redaction, that would protect against the government's unjustified concern that he might not abide by a protective order from this Court limiting his use or disclosure of personal identifying information he receives in discovery. What Mr. Sodi objects to is a condition imposed without good cause that imposes a significant burden on him when the government could eliminate the problem by

---

is defies common sense.

[10] The government's proposed protective order is broad and general, so it is not clear what all records would be at issue. In discussions with the government that Counsel undertook to see if we could reach a mutually agreeable protective order, it seemed clear that the government's primary concern with regard to allowing Mr. Sodi to have unsupervised access to the discovery in the case against him was that there are trading records related to people who traded in the SUSA stock. Were the protective order limited to just those records—which are unlikely to be a particularly fruitful source of Mr. Sodi's assistance in his defense—perhaps the conditions the government proposes could be made workable. However, the government has not attempted to limit the applicability of the protective order with its supervision requirement in any meaningful way.

**OBJECTION TO MOTION FOR PROTECTIVE ORDER**
**CASE NO. 5:18-CR-00056-VEH-HNJ-1, PAGE 6**

redacting records or by more narrowly tailoring the protective order it seeks.

    **(b)**     **MR. SODI'S ATTORNEYS SHOULD BE ALLOWED TO MAKE USE OF INFORMATION TO DEFEND AGAINST THE RELATED CIVIL CASE THAT THE GOVERNMENT REFUSED TO STAY.**

        **(1)**     **The Government Refused to Stipulate to A Stay of The SEC Matter, Which Could Have Avoided This Issue.**

Before addressing the substantive issue of the limited use provision of the proposed protective order it is important to understand that Mr. Sodi is defending against a civil SEC lawsuit and this criminal case at the same time. The two actions cover virtually the same conduct for the same time periods. Because of the overlapping issues and likely duplication, Mr. Sodi's counsel approached the SEC about staying the civil case while the criminal case is ongoing. The SEC informed Mr. Sodi's counsel that it did not have an objection to that proposal but added that as a matter of policy they would object unless the Department of Justice joined Mr. Sodi's motion to stay the SEC case. The Department of Justice, meanwhile, also said they had no objection to a stay of the civil case but would not affirmatively join Mr. Sodi's motion to stay, again as a matter of policy. So, two federal agencies both say they do not object to a stay, but neither will cooperate in Mr. Sodi's efforts to stay the SEC case.

This is important because the limited use provision the government proposes is even more unworkable when Mr. Sodi's criminal counsel also represents him in the SEC's lawsuit and must simultaneously litigate the same issues, but will have to pretend, for the purposes of the SEC litigation, that they do not know things that they learned through the criminal discovery process. How this would work is difficult to picture, and in truth the only true compliance with that provision would be if Mr. Sodi's criminal counsel were precluded from representing him in the civil SEC case. Otherwise, counsel will inevitably "use" information it learns in criminal discovery as part of the civil defense, including by knowing what witnesses who may be deposed have told law enforcement at the time they are deposed, by knowing what documents exist, and by knowing agreements some government agencies have made with witnesses in the case.

While the limited use provision is not supported by good cause in any event, the fact that

the government declined to cooperate in staying the civil case, which would present some hope of counsel being able to keep straight what information was from which case, makes the problem worse.

### (2) The Government's Arguments for the Limited Use Provision Are Groundless.

The proposed protective order contains a condition that "Defendant, including defendant's counsel and their personnel, may use this information only for the purposes of this case."[11] In case the language of the order does not make it clear,[12] the government in its motion states that it wants, "a limited-use provision requiring criminal discovery provided in this case to be used only in this case."[13] Because of the simultaneously-filed, overlapping civil SEC action, this condition is likely to prove unworkable and Mr. Sodi objects to the condition. What Mr. Sodi wants is simple: he wants to be allowed to use all of the information disclosed by the government in the criminal case to defend against the SEC's case as well. The government objects citing inapplicable grand jury compulsion cases, and, oddly, the *Touhy* case.

### (A) Mr. Sodi Is Not Seeking to Compel the Disclosure of Any Information Covered by Grand Jury Secrecy Requirements, and Thus, the Douglas Oil Case Is Inapposite.

The government, citing inapplicable cases, confuses the issue. The issue is not whether Mr. Sodi could, in the SEC civil case or some other civil case, compel the government to turn over information it received through the grand jury process. Disclosure of grand jury material to civil litigants and the particularized need, discussed in the *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,

---

[11] D.E. 36 at 6.

[12] The proposed protective order is not so clear. The limited use provision in the proposed protective order uses the phrase "this information" to define what can be used only in this criminal case. The apparent antecedent for the phrase "this information" is "discoverable individually identifiable personal identity information as described in Rule 49.1 of the Federal Rules of Criminal Procedure." Of course, Rule 49.1 has nothing to do with discovery. Rather, Rule 49.1, as its title and the comments to it make clear, deals only with electronic or paper filings with the Court. Since no party will be filing the discovery produced by the government with the Court, Rule 49.1 has nothing to say about discovery. It appears that the only thing covered by the limited use provision as drafted is discoverable individually identifiable personal identity information, which is narrower than what the government says it wants covered, which is all criminal discovery.

[13] D.E. 36 at 4.

441 U.S. 211, 223 (1979) line of cases, is not at issue here. Mr. Sodi is not seeking to compel the government to produce any grand jury material to him.

Instead, what is at issue is, the use Mr. Sodi should be allowed to make of material that the government chooses to disclose to meet its criminal discovery obligations. In that context the analysis of Rule 6(e) is very different, and the *Douglas Oil* case is entirely irrelevant. Under Rule 6(e) a criminal defendant like Mr. Sodi can use material disclosed to him that was previously covered by Rule 6(e) and is not prohibited from disclosing that information to third parties or using it for any reason whatsoever. This is because once material previously covered by Rule 6(e) of the Federal Rules of Criminal Procedure is turned over to Mr. Sodi, presumably under the authority granted in 6(e)(3)(E)(i), Mr. Sodi can disclose it to anyone he chooses because under Rule 6(e)(2)(A): "No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)." Mr. Sodi, a criminal defendant, is not on the list of people on whom secrecy may be imposed. So, Rule 6(e) expressly prohibits imposing a secrecy obligation on Mr. Sodi, or his counsel. Grand jury secrecy is simply not at issue; once the government discloses matters occurring before the grand jury to Mr. Sodi as part of its general discovery obligations, Rule 6(e) does not limit his use or further dissemination of the information he learns. Further, documents disclosed to Mr. Sodi cease to be protected by Rule 6(e).

What then would be the good cause to preclude the use of this information that the government is disclosing in the defense of the SEC case? Allowing Mr. Sodi and his criminal counsel (who are also his counsel in the SEC matter) to use the criminal discovery he obtains in the civil SEC case would not involve any further dissemination of previously confidential grand jury material. The government cites no law that establishes that material disclosed to a criminal defendant can or should be used only for the criminal case. The government's half-hearted attempt to find such a limitation in the *Douglas Oil* case is legally baseless.

  **(B)**  *Mr. Sodi and His Counsel Will Already Know Who Is Cooperating with the Government and Who Is Also under Investigation From The Records Disclosed in Criminal Discovery Regardless Of Whether They Can use The Criminal Discovery Records In Defending Against the Civil Case.*

  The government also makes the bland and general claim that the discovery in this case will disclose "cooperating witnesses and other individuals who may be under investigation," and that it would "be inappropriate to allow such information to be used for a purpose other than preparing a defense in this criminal case." The government does not say how or why it would be inappropriate to allow Mr. Sodi to use that information to defend against the SEC case and consequently fails to articulate "a clearly defined and serious injury" to be avoided by the entry of the protective order. *United States v. Belfast*, cited *supra*, at *2. As a practical matter it is also impossible to remedy: to the extent such matters are revealed in the criminal discovery, it is inevitable that Mr. Sodi's counsel will know who the cooperating witnesses are and who else may be under investigation. What then is counsel to do, pretend we do not know this information when we represent Mr. Sodi in the civil SEC case? And if so, what interest would that advance? Short of disqualifying Mr. Sodi's criminal counsel from representing him in the civil matter, the problem of Mr. Sodi's SEC counsel knowing the identity of cooperators and who else is under investigation cannot be avoided.

  The government also provides no explanation for why it would be appropriate for Mr. Sodi to know who else is under investigation and who was a cooperating witness when he is defending himself in the criminal case, but it would be inappropriate for him to know these same things as he simultaneously defends himself against the SEC's suit about the same transactions. In failing to articulate why it would be inappropriate for counsel to know what counsel will inevitably know, the government fails to establish good cause for the conditions it seeks.

  Further, allowing Mr. Sodi's counsel to use information it already has as part of a criminal case to litigate a related civil case is consistent with the Supreme Court decision in *United States v. John Doe, Inc. I*, 481 U.S. 102, 108, 107 S. Ct. 1656, 1660, 95 L. Ed. 2d 94 (1987). There, attorneys who represented the government in a criminal grand jury investigation used the

information they obtained in that investigation to conduct a civil lawsuit against a party. The defendant filed suit arguing that the attorneys who had information covered by Rule 6(e) from their participation in the criminal case could not use it in the civil case because continued use amounted to inappropriate disclosure. The Supreme Court held that it was not disclosure and that attorneys who had been exposed to grand jury material as part of a criminal case could continue to use that material in the conduct of a subsequent criminal case to which that information was relevant. If this is appropriate for government attorneys, to whom Rule 6(e) clearly applies, it is all the more appropriate to allow criminal defendants and their counsel, on whom Rule 6(e) imposes no obligation of secrecy, to continue to use the material.

      **(C)**    *The Government's Argument About the Touhy Regulations Lacks Merit.*

The government also makes the inscrutable argument that allowing Mr. Sodi to use information he has would "circumvent" the civil discovery process by providing him with "documents discoverable only through agency *Touhy* regulations."[14] As the Court is undoubtedly aware, the SEC is obligated to make broad initial disclosures in its case. Indeed, the SEC must provide disclosures, including "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."[15] So, the SEC must disclose everything in its control.[16]

Perhaps the government is suggesting that, were Mr. Sodi only named in the civil case, and

---

[14] D.E. 36 at 4.
[15] Fed. R. Civ. P. 26(a)(1)(A)(ii)
[16] The government also claims that use outside of the criminal case could be problematic because some of the material would be covered by secrecy obligations imposed on the SEC by treaties with other securities regulators. Were Mr. Sodi seeking to use this information outside the context of defense of the SEC matter, perhaps that would be a coherent argument. As it applies to this case the argument is nonsensical. The hypothetical material at issue would be produced by foreign governments to the SEC and by the SEC to the DOJ and by the DOJ to Mr. Sodi, who would then use it in litigation against the DOJ, who produced it to him, and against the SEC, who produced it to the DOJ. The government has pointed to no treaty or SEC regulation that would not allow Mr. Sodi to use information produced to the SEC by foreign governments to defend himself against claims brought by the SEC.

not the criminal case, the DOJ or other criminal investigative agencies would not provide documents absent compliance with the *Touhy* regulations. But neither *Touhy* nor the *Touhy* regulations create any protected class of documents or provide any substantive confidentiality. Rather, the regulations identify under what circumstances a federal agency will waive the government's sovereign immunity against contempt of court motions and comply with a subpoena which sovereign immunity would otherwise allow the government to ignore. But nothing in *Touhy* suggests that it is inappropriate for a party to make use of documents it obtained in a parallel criminal proceeding.

What the government appears to be arguing, then, is that allowing Mr. Sodi to simply use the documents the DOJ discloses in its case in the SEC case is too easy for him and that he ought to be obligated to jump through procedural hoops to get the same documents from the SEC that he will get from the DOJ in this case. Stated differently, there is a gauntlet of procedural regulations and Mr. Sodi ought to be made to run it because the gauntlet exists. In essence the government wants to waive sovereign immunity in the criminal case, but assert it and require compliance with *Touhy*, in the civil case. A clearer case of wanting to have one's cake and eat it too is difficult to imagine. No Court that counsel can find has ever found that assuring a litigant has to comply with *Touhy* regulations amounts to good cause for a protective order.

Further, the *Touhy* argument highlights the asymmetry the government seeks here. Nothing in this order would preclude the government from sharing information it learns as part of its prosecution of this case with the SEC. For example, if Mr. Sodi provides a document to the government here, the government would be immediately free to share that document with the SEC, where it could be used against Mr. Sodi. But while the government apparently wants freedom to share with the SEC, it wants to impose significant and pointless hurdles in Mr. Sodi's way as he attempts to defend himself against the SEC. The government has not identified good cause for this asymmetry.

To be clear, Mr. Sodi has no objection to an order precluding his attorneys from using the

material provided to him for any reason other than defending against the criminal case and the SEC case, even if such an order contradicts the express provisions of Rule 6(e). Mr. Sodi only seeks an order allowing his attorneys to use the information they obtain in the criminal discovery process to defend against the parallel civil suit brought by the SEC, which the government refused to help stay.

    **(c)   THE PROTECTIVE ORDER SHOULD REQUIRE THE GOVERNMENT TO IDENTIFY ALL PROTECTED MATERIAL AND SHOULD NOT IMPOSE POST HOC RESTRICTIONS ON MR. SODI'S USE OF MATERIAL.**

The proposed protective order provides that:

> [F]ailure to designate any materials as subject to this Protective Order shall not constitute a waiver of any party's assertion that the materials contain confidential personal identity information or should be covered by the terms of this Protective Order.

These sorts of claw back provisions are common in civil litigation and serve the purpose of allowing a litigant to claw back confidential records that were inadvertently disclosed without being designated as protected. In civil cases such failure to designate records can cause great harm to businesses if, for example, trade secrets or privileged communications were to be used by the other party.

Here, there is no need for such claw backs. The government has had ample time to investigate and review discovery (the last act at issue in the indictment took place in 2013). If the government does not have certainty as to what records should be covered, it should bear the burden of that uncertainty, not Mr. Sodi. The government's proposed claw back provision could impose burdens on Mr. Sodi for the government's negligence, and the government has not identified any good cause for this provision.

////

////

////

## III.   CONCLUSION

For the reasons set forth above, Mr. Sodi objects to the government's proposed protective order to the extent it: (1) seeks to preclude him from reviewing discovery without his counsel being present; (2) limits use of the discovery materials to this criminal case; and, (3) allows the government to post hoc designate records as protected. Aside from these issues, Mr. Sodi does not object to the government's proposed protective order.

DATED: May 29, 2018                                          SMITH CORRELL, LLP

                                                                                              /s/ D. Loren Washburn
                                                                                             D. Loren Washburn
                                                                                             *Attorneys for Brian R. Sodi*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, the foregoing **OBJECTION TO MOTION FOR PROTECTIVE ORDER** was served on the person(s) named below via the Court's electronic filing system:

Jay E. Town
U.S. ATTORNEY'S OFFICE
1801 4th Avenue North
Birmingham, AL 32302-2101

Jonathan S. Keim
U.S. ATTORNEY'S OFFICE
400 Meridian Street N, Suite 304
Huntsville, AL 35801

James B. Eubank
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Alabama Securities Commission
401 Adams Avenue, Suite 280
Montgomery, AL 36104

/s/ Melina Hernandez