IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

<u>NORTHEASTERN DIVISION</u>

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 5:18-CR-00056-VEH-HNJ |
| | ) |
| BRIAN ROBERT SODI | ) |
| a/k/a "Mailman" | ) |

<u>GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTION FOR
PROTECTIVE ORDER</u>

The defense does not object to the entry of *some* protective order. The question before the Court is therefore not *whether* a protective order should be entered, but *which* protective order, i.e., whether the Court should enter the Government's proposed protective order or draft a new one along the lines urged by the defendant. For the reasons that follow, the Court should enter the Government's proposed order.

I.  <u>THE SUPERVISION PROVISION IS APPROPRIATE AND
    NECESSARY</u>

The Government's proposed order includes a provision requiring the defendant to review "protected discovery materials" only "in the presence of counsel and his/her employees." Gov't Mot. at 8. The provision is justified because the mere presence of sensitive personal and financial information in criminal discovery, particularly in the quantities that it exists in this case, satisfies whatever standard the Court might apply. In addition, the crime was committed by mailing promotional materials to individuals

1

who might be susceptible to fraud, the defendant had connections to the financial underworld, and such information could easily be put to nefarious or inappropriate use by the defendant or others. Gov't Mot. at 3-4. Accordingly, the defendant's primary objection, that there is no "good cause" for a supervision provision, fails.[1] His argument on this point also suffers from four additional problems.

### A. The defendant erroneously states the "good cause" standard in the Eleventh Circuit.

The defendant argues that the Government has failed to meet the "good cause" standard of Rule 16(d)(1). But the defendant misunderstands the standard. In the Eleventh Circuit, "good cause" is understood to be a "well established legal phrase" that, "[a]lthough difficult to define in absolute terms, . . . generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987) (describing "good cause" standard for protective order issued under Fed. R. Civ. P. 26(c)); *United States v. McGowan*, 552 F. App'x 950, 954 (11th Cir. 2014) (applying same standard to phrase "good cause" in Fed. R. Evid. 902(3)); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985) (interpreting civil Rule 26(c)); *United States v. Garrett*, 571 F.2d 1323, 1326 n.3

---

[1] The defendant flatly mischaracterizes the Government's proposed protective order, claiming that the Government says "Mr. Sodi should not be exposed to" the sensitive information. As the language of the proposed order clearly says, however, the defendant would be explicitly allowed to "review the protective discovery materials in the presence of counsel and his/her employees[.]" Gov. Mot. at 8. He would only be prevented from keeping or copying them.

(distinguishing standard from stereotyped and conclusory statements). As such, the Court has substantial discretion to "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). This Court's previous applications of "good cause" in civil litigation are consistent with Eleventh Circuit practice on this point. *See Nat'l Fire & Marine Ins. Co. v. Wells*, --- F. Supp. 3d ---, 2018 WL 1305624, at *8-*9 (N.D. Ala. Mar. 13, 2018) (standard for "good cause" allows "excusable neglect," an "elastic concept" that requires balancing of multiple factors); *see also Hernandez v. Comm'r*, No. 4:17-CV-00046-HNJ, 2018 WL 1472469, at *3-*4 (N.D. Ala. Mar. 26, 2018); *Wells v. Comm'r*, No. 4:16-CV-01496-HNJ, 2018 WL 1305626, at *3-*4 (N.D. Ala. Mar. 13, 2018); *Baker v. Comm'r*, No. 2:15-CV-01052-HNJ, 2018 WL 776399, at *3-*4 (N.D. Ala. Feb. 8, 2018); *Johnson v. AT&T Umbrella Benefit Plan No. 3*, No. 2:15-CV-01074-HNJ, at *2-*3 (N.D. Ala. Jan. 9, 2018).

The defendant relies primarily on *United States v. Belfast*, No. 06-20758-CR, 2007 WL 9705938 (S.D. Fla. Apr. 26, 2007), an unreported slip opinion involving a government request to withhold from the defendant until trial the name of a victim tortured by the defendant in Liberia. *Belfast*, 2007 WL 9705938, at *4. The circumstances involved allegations of multiple acts of torture against multiple people over an extended period of time, so the proposed order would have made it difficult for the defense to determine which allegations were at issue. *See id.* Here, by contrast, the Government seeks to produce voluminous and largely *unredacted* discovery to the defense well in advance of trial, and merely seeks appropriate safeguards for the information.

3

### B.  The protective order must respect sensitive information about victims and third parties.

The defendant's argument fails to account for the weighty interests of victims and third parties whose information is part of the criminal discovery in this case. Sensitive personal information deserves special treatment primarily because of its nature, not, as the defense assumes, solely because it might be used to commit exactly the same crime in exactly the same way.[2]

Crime victims, moreover, have statutory rights beyond those of third parties, with federal law assuring victims the "right to be treated . . . with respect for [their] dignity and privacy." 18 U.S.C. § 3771(a)(8). "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the right[]" described above. 18 U.S.C. § 3771(b)(1). This statutory right, which is directly implicated by the provision of sensitive personal identifying information and financial records in criminal discovery, constitutes a "sound basis" and "legitimate need to take judicial action." *See In re Alexander Grant & Co. Litigation*, 820 F.2d at 356; *McGowan*, 552 F. App'x at 954.

*Any* unauthorized disclosure of the sensitive information would harm the privacy and dignity of victims and third parties. Consequently, the Government's proposed

---

[2] Commercial use of sensitive information obtained in discovery would likewise be improper and should be forbidden by the protective order.

supervision provision would be appropriate in *any* case where the defense is to be entrusted with personally-identifying information and sensitive financial documents, *regardless* of the charged crimes. It is especially appropriate here because the information to be provided in criminal discovery pertains to tens of thousands of victims and numerous third parties, and moreso still because the charged crimes resembles many of the possible unlawful uses to which such sensitive information might be put. In this case, defense counsel may rightly be entrusted, as officers of the court, with the responsibility to control and supervise the use of sensitive personal information.

Moreover, the Court should not rely on the defendant's conclusory promise to abide by a protective order. The defendant's assurance that he will not do anything bad with the information is inadequate basis to eliminate practical protections for sensitive information about thousands of people and their finances. Indeed, it is hardly consistent for the defense to dismiss the Government's stated reasons for the protective order as "specifically failing to identify any reason" while offering the Court nothing more than conclusory promises. The people whose personal and financial information winds up in criminal discovery are entitled to more protection than that.

### C.   The Government is not responsible for shouldering burdens created by the defendant's choice of counsel.

The defendant notes the logistical burdens resulting from his choice of counsel. Def.'s Opp'n at 4. The defendant claims that supervision would devastate his ability to "meaningfully assist in his defense," Def.'s Opp'n at 4, and while this sounds like

5

overstatement to the Government, it is doubtless true that requiring the defendant to review criminal discovery in the presence of chosen counsel or their employees would add some expense. If that provision is appropriate, however, the question is not whether the expense of that choice will be incurred; the question is who must bear it. This is relevant here because the defendant has exercised his constitutional right to choose counsel based thousands of miles away from his home and the venue in this case. The exercise of one's right to chosen counsel does not encompass the right to force the Government to bear the cost of that choice. *Cf. Ass'n for Disabled Americans, Inc. v. Integra Resort Mgmt., Inc.*, 385 F. Supp. 2d 1272, 1301 (M.D. Fla. 2005) ("There is no justification for shifting the burden of travel expense for Plaintiffs' choice of counsel."); *Demers v. Adams Homes of Nw. Fla., Inc.*, No. 6:06-CV-1235ORL31KR, 2008 WL 2413934, at *2 (M.D. Fla. June 11, 2008) ("Defendant is correct that the fact that Plaintiff's law firm chose to staff this case with attorneys from its Melbourne office rather than its Orlando office does not make the attorneys' travel compensable."), *aff'd* 321 F. App'x 847 (11th Cir. 2009); *WHM LLC v. Nat'l Ass'n of Certified Home Inspectors*, No. 6:08-CV-864-ORL-22DAB, 2008 WL 5147367, at *3 (M.D. Fla. Dec. 8, 2008) ("While Plaintiff (or any party for that matter) has the right to the services of any

counsel it chooses, when, as here, the cost of counsel is to be visited on another party, that right is not unfettered.").[3]

### D. The alternatives to the Government's proposed protective order are inadequate.

The defendant appears to endorse three possible solutions to the logistical challenges he notes. One would require the Government to redact all sensitive information from the criminal discovery before it may be provided to the defense. Def.'s Opp'n at 3. The problem with that suggestion, however, is that redaction of the voluminous discovery in this case will require literally several weeks, if not several months, of Government paralegal time, with additional Government attorney time for review of those redactions, significantly delaying the process of criminal discovery.

The defendant's second solution is to use an alternative mechanism for remote viewing of documents, such as a digital portal. Def.'s Opp'n at 4. However, the Government does not have a portal that can protect against unauthorized copying and dissemination in the absence of supervision, and the defendant provides no details to

---

[3] Mr. Sodi also asserts the "constitutional right to review the evidence against him . . . without undue burden." Def.'s Opp'n at 6. This claim does not advance the defendant's argument because the Supreme Court has specifically said that he does not have such a right. *See Weatherford v. Bursey*, 429 U.S. 545, 559-60 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . . .'" (citing *Wardius v. Oregon*, 412 U.S. 470, 474 (1973))).

7

assure the Court that a defense portal would include such protections. Without more details, the Court should not assume that it would.

The third proposed solution is that the Court could narrow the scope of the protective order. Def.'s Opp'n at 6-7. But narrowing the scope of the protective order along the proposed lines would not meaningfully reduce the burden of redaction because the Government would still be required to conduct a page-by-page search for sensitive information. Criminal discovery contains a significant number of financial records, both of victims and third parties, some of which pertain to individual accounts and some of which pertain to omnibus accounts. Moreover, the sensitive discovery includes more than just financial records and identifies "cooperating witnesses whose cooperation is not already publicly known, or identif[ies] individuals who may be under investigation." Gov't Mot. at 1-2. Such information is routinely protected in criminal discovery. Accordingly, the Government opposes narrowing the categories of information covered by the protective order.

## II.   THE GOVERNMENT'S LIMITED-USE PROVISION IS APPROPRIATE

The defendant does not object to some limited-use provision. The only question is whether the protective order should limit use of criminal discovery to this criminal case, as the Government requests, or also permit use of "all of the information disclosed by the government in the criminal case" in a separate civil lawsuit brought in this district

by the U.S. Securities and Exchange Commission (SEC).[4] Def.'s Mot. at 12-13 ("To be clear, Mr. Sodi has no objection to an order precluding his attorneys from using the material provided to him for any reason other than defending against the criminal case and the SEC case[.]"). The law, however, strongly favors the Government's proposed restriction with respect to grand jury materials, and such a provision would be prudent for the rest of criminal discovery as well.

### A.    The law strongly favors limitations on the use of grand jury material.

The defendant overstates the permissible uses for grand jury material disclosed in this criminal case. According to his brief, "once material previously covered by [Federal Rule of Criminal Procedure] Rule 6(e) [] is turned over to Mr. Sodi, . . . Mr. Sodi can disclose it to anyone he chooses." Def.'s Opp'n at 9. He cites no case in support of this sweeping proposition. This is because Rule 6(e)(3)(E) squarely says the opposite: "The court *may* authorize disclosure—at a time, *in a manner, and subject to any other conditions that it directs*—of a grand-jury matter."[5] Fed. R. Crim. P. 6(e)(3)(E) (emphasis added). And the standard for ordering such disclosures is governed in the

---

[4] The defendant spends several paragraphs discussing whether a stay would be appropriate in the SEC's civil case against him. Def.'s Opp'n at 7-8, 13. The United States is not a party to the SEC's civil case, however, and therefore takes no position on whether a stay is appropriate in that case.

[5] The defendant also incorrectly argues that because defense counsel and the defendant are not among the persons in Rule 6(e)(2)(B) upon whom under a Rule 6(e)(2)(A) secrecy requirement may be imposed, the Court may *never* restrict how grand jury information may be used by persons to whom grand jury material may be disclosed. Def.'s Mot. at 9. This likewise fails under the plain text of Rule 6(e)(3)(E).

9

first instance by a robust body of case law that typically requires a particularized showing of need prior to disclosure, even when the information is sought to be disclosed to federal civil enforcement authorities. *See, e.g.*, *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 442-46 (1983) (Department of Justice Civil Division attorneys may only obtain grand jury materials through court disclosure order subject to showing of "particularized need" standard); *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958) (civil litigant required to make showing of "particularized need" before court may authorize production of grand jury transcripts); *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004). Thus, the defense's claim that "[n]othing in this order would preclude the government from sharing information it learns as part of its prosecution of this case with the SEC," Def.'s Opp'n at 12, is misleading.

Even where there is no required showing of particularized need, such as with disclosures of grand jury transcripts under the *Jencks* Act, the disclosure is narrowly tailored. Grand jury testimony of Government witnesses or prospective witnesses at trial is made available under the *Jencks* Act with the express purpose of facilitating use of such material "in the trial." *See generally* 18 U.S.C. § 3500(a)-(c). And, although reported decisions are few, federal courts have generally adhered to the proposition that courts may require the defense to return *Jencks* materials after the trial or hearing for which it was produced. *Compare United States v. Fried*, 881 F.2d 1077 (table), at *3 (6th Cir. 1989); *United States v. Barbeito*, No. 2:09-CR-00222, 2009 WL 3645063 (S.D.W. Va.

10

Oct. 30, 2009); *United States v. Rafela-Ramirez*, No. 09-CR-00160-WYD, 2009 WL 1537648, at *2 (D. Colo. May 29, 2009); *United States v. Hakim*, Crim. No. 88-0080-02, 1989 WL 12029 (D.D.C. Jan. 25, 1989); *and United States v. North*, Crim. No. 88-0080-02, 1989 WL 12043 (D.D.C. Jan. 17, 1989); *with United States v. Basciano*, 2006 WL 2270432, at *2 (E.D.N.Y. 2006); *United States v. Harloff*, 826 F. Supp. 675, 676 (W.D.N.Y. 1993). None of this is consistent with the defendant's assertion of an unqualified right to disclose grand jury material "to anyone he chooses." Def.'s Opp'n at 9.

The one relevant case offered by the defendant in support of his position, *United States v. John Doe, Inc. I*, 481 U.S. 102, 108 (1987), is distinguishable on grounds that support the Government's position. In *John Doe, Inc. I*, the Supreme Court addressed the limited question of "whether an attorney who was involved in a grand jury investigation (and is therefore presumably familiar with the 'matters occurring before the grand jury') may later review that information *in a manner that does not involve any further disclosure to others*." *Id.* at 111 (emphasis added). The Supreme Court said the attorney could, but also said that it was not addressing the question before this Court, "the very different matter of an attorney's disclosing grand jury information to others, inadvertently or purposefully, in the course of a civil proceeding[.]" *Id.* at 111.

So long as the defendant does not use grand jury material in a way that results in disclosure to any other person, in court or otherwise, the Government's proposed protective order would not be offended. And the defendant is entitled to seek permission to make use of the materials. But the claim that the defendant may use and

11

disclose grand jury material whenever and however it suits him is inconsistent with the law, which "prohibits the disclosure of grand jury material except in the limited circumstances provided for in Rule 6(e)(3)." *United States v. Aisenberg*, 358 F.3d 1327, 1347 (11th Cir. 2004).

> B. **Limitations on the use of non-grand jury materials are justified in this case.**

The remaining discovery, which constitutes information obtained from sources other than grand jury transcripts or proceedings, should likewise be subject to a limitation for use only in this case. First, allowing civil use of documents obtained by the Government from the SEC will not help the defendant in his civil case because, as he concedes, he will already have access to documents available in the civil case. Def.'s Opp'n at 11. Accordingly, there will be no prejudice to the defendant from limiting to this case the use of documents received in this case.

Second, the criminal discovery includes items obtained from sources other than the SEC. Without a limited-use provision, the defense would be able to make use of this information in the civil case while any other party to the civil case would be subject to *Touhy* regulations. The defendant, aware of certain items available through criminal discovery, might find it easier to obtain information through the ordinary civil channels than if he had not received such information in criminal discovery. But knowing things is different from making use of criminal discovery in a civil case, and the Court should

protect criminal discovery from functioning as an end-run around ordinary civil discovery processes and standards.[6]

## III. THE REDACTION PROVISION IS APPROPRIATE

Twice the defendant claims that the proposed Order is unconnected to Rule 49.1, which protects the personally-identifying information of individuals whose information is in documents filed in Court. Def.'s Opp'n at 2, 9 n.12. However, the Government's proposed protective order would regulate the filing – such as with exhibits – of sensitive documents obtained in discovery that contain personal identity information. Gov't Mot. at 9 (requesting provision mandating Rule 49.1 redactions to be applied to protected discovery materials filed in court and governing the identification and handling of such documents by the Court). This provision is consistent with Rule 49.1.

## IV. THE CLAW BACK PROVISION IS APPROPRIATE

The defense concedes that the "claw back" provision in the proposed protective order is "common in civil litigation." Def.'s Opp'n at 13. Such a provision would protect information produced in discovery and is not unusual or burdensome in any way.

---

[6] The defendant makes the sweeping claim, with little explanation and no supporting authority, that the government "wants to waive sovereign immunity in the criminal case[.]" Def.'s Opp'n at 12. Waivers of sovereign immunity are not implicated here.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Government's Motion for a Protective Order.

>Respectfully submitted,
>
>JAY E. TOWN
>UNITED STATES ATTORNEY
>
>**By:** **/s/Jonathan S. Keim**
>Jonathan S. Keim
>*Assistant United States Attorney*
>United States Attorney's Office
>400 Meridian St., Suite 304
>Huntsville, AL 35801
>Phone: (256) 534-8285
>Fax:     (256) 539-3270

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

        Respectfully submitted,

        JAY E. TOWN
        UNITED STATES ATTORNEY

**By:**   /s/Jonathan S. Keim
        Jonathan S. Keim
        *Assistant United States Attorney*
        United States Attorney's Office
        400 Meridian St., Suite 304
        Huntsville, AL 35801
        Phone: (256) 534-8285
        Fax:   (256) 539-3270